**UNITED STATES of America**

v.

**Jean BERNIER, Defendant.**

**No. 90 Cr. 0653 (RWS).**

United States District Court,
S.D. New York.

Feb. 25, 1991.

SENTENCING OPINION

SWEET, District Judge.

Defendant Jean Bernier ("Bernier") was convicted following a bench trial on December 4, 1990 on all counts of a seven count indictment for bank robbery and possession of a firearm returned on October 4, 1990. For the reasons set forth below, Bernier will be sentenced to a term of 40 years of imprisonment followed· by a three year term of supervised release, subject to the sentencing hearing now set for February 27, 1991. Pursuant to 18 U.S.C. § 3013, a special assessment of $350.00 is mandatory.

*The Defendant*

Bernier is a thirty-three year old resident of Brooklyn with a fourteen year criminal record. In 1976, he was charged with second degree robbery for stealing a woman's pocketbook in Brooklyn. He was eventually convicted of third degree robbery, for ·which he served one year in prison. In 1977, he pled guilty to disorderly conduct for jumping over a subway turnstile. For this offense, he served fifteen days in jail and paid a twenty-five dollar fine. In 1982, Bernier pled guilty to third degree assault, a misdemeanor, and served another fifteen days. His next offense was an attempt to

rob a supermarket in Brooklyn in 1983, during which he used an imitation gun. He pled guilty to attempted robbery in the third degree and was again sentenced to one year imprisonment. In 1985, Bernier pled guilty to second degree armed robbery for using a firearm to take money from a storekeeper. At this time, he was sentenced as a predicate felon to a term of three to six years in prison. After serving slightly more than three years, Bernier was released on parole in September, 1988. He was still on parole at the time of the instant offenses.

### The Offenses

On March 23, 1990, Bernier robbed the Seaman's Bank at 15 Beaver Street in New York City by displaying a handgun to a teller and telling him to "give me all your fifties and twenties." After receiving an envelope containing $1,447, Bernier fled on foot. As he left the bank, a security dye pack in the envelope went off and caused him to drop the envelope, which was retrieved by a security guard.

On May 14, 1990, Bernier robbed Chase Manhattan Bank at 666 Fifth Avenue, again by threatening a teller with a handgun, this time explicitly stating, "Give me all your hundreds and fifties or I'll shoot you." This time he succeeded in escaping with the money, estimated at about $4,300. Security camera pictures from both banks enabled law enforcement authorities to identify Bernier as the guilty party, but they were unable to locate him.

In June 1990, Bernier attempted to rob a restaurant in New York at gunpoint. This time, he threatened one employee and assaulted two with his gun. Before he could leave the restaurant with the money he was apprehended by New York City police officers.

### The Charges

Bernier was charged with two counts (Counts I and IV) of armed bank robbery, 18 U.S.C. §§ 2113(a),(d), two counts (Counts II and V) of using a firearm during the commission of a violent crime, 18 U.S.C. § 924(c), and three counts (Counts III, VI, and VII) of unlawful possession of a firearm by a felon, 18 U.S.C. § 922(g). After

extended plea discussions, he elected to proceed with a bench trial. On December 4, 1990 he was convicted on all counts.

## THE SENTENCE

### Prison Term

The Statutory Minimum

On the two armed robbery counts, the statutory maximum sentence is twenty-five years. 18 U.S.C. § 2113(d). For each count of unlawful possession of a firearm by a felon, Bernier faces a mandatory sentence of not less than fifteen years without possibility of parole. 18 U.S.C. § 924(e)(1). These sentences may all be served concurrently.

On the first count of using a firearm in the commission of a violent crime, the mandatory sentence is five years without parole. 18 U.S.C. § 924(c)(1). For the second violation, the mandatory sentence is twenty years without parole. *Id.* Both the first and second violations of § 924(c) may be charged in a single indictment. *United States v. Rawlings*, 821 F.2d 1543 (11th Cir.), *reh'g denied* 829 F.2d 1132 (11th Cir.), *cert. denied*, 484 U.S. 979, 108 S.Ct. 494, 98 L.Ed.2d 492 (1987). The statute further provides that "the term of imprisonment under this subsection [shall not] run concurrently with any other term of imprisonment including that imposed for the crime of violence or drug trafficking crime in which the firearm was used or carried." 18 U.S.C. § 924(c)(1). Thus Bernier faces a minimum of twenty-five years on these two counts, consecutive to any other sentence.

In total, therefore, Bernier is subject to a statutory minimum sentence of forty years: fifteen years for possession of a firearm by a felon followed by twenty-five years for using a firearm during the commission of the two bank robberies.

The Guidelines

The Presentence Report prepared by the U.S. Probation Office grades the charges against Bernier under the United States Sentencing Guidelines (the "Guidelines") at a total offense level of 26 and assigns him

a Guidelines criminal history category of IV. Under the Guidelines, violations of § 924(c)—Counts II and V here—are not taken into account because of the mandatory sentences in that section and the statutory requirement that those sentences be served consecutive to any other sentences. Guidelines § 2K2.4. The Sentencing Table provides for an imprisonment range of 92 to 115 months for an offender with Bernier's numerical sentencing characteristics. However, because the statutory minimum sentence on Counts III, VI and VII of fifteen years exceeds the maximum of 115 months, the Guidelines range would be disregarded and Bernier would be sentenced to a total of fifteen years on the five relevant counts (Counts I, III, IV, VI and VII), followed by the statutorily mandated term of twenty-five years on Counts II and V.

In this case, however, the Guidelines direct that the actual offense level and criminal history category must be disregarded here because Bernier qualifies as a career offender under § 4B1.1 of the Guidelines:[1]

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Applying this section, Bernier is classified as a § 4B1.1(B) career offender and assigned an adjusted offense level of 34 and a criminal history category of VI.[2] This increases the Guidelines sentencing range on the five relevant counts to between 262 and 327 months—twenty-one years and ten months to twenty-seven years and three

months. Because this range satisfies the statutory minimum required by § 924(e), the Guidelines would be applied and Bernier's minimum possible sentence would be forty-six years and ten months, consisting of the minimum under the Guidelines followed by a five year sentence on Count II and then a twenty year term on Count V.

Departure

■ Based on the lack of interaction between the Guidelines and the statutory provisions, Bernier is subject to a term of imprisonment ranging from nearly forty-seven years to in excess of fifty-two years. The application of the career offender provision nearly triples the minimum Guidelines sentence on the five relevant counts—from 92 months to 262 months, and Bernier's minimum possible term is further amplified by the mandatory consecutive sentencing provision of § 924(c). Moreover, the consecutive sentence is itself augmented from five to twenty-five years as a result of Bernier's repeated armed criminal behavior.

In general application, the career criminal provisions of the Guidelines substitute an enhanced penalty for what the defendant would otherwise have received. The most serious enhancement available is defined by § 4B1.1(A) as an enhancement to offense level 37 and criminal history VI, which translates to a sentence in the range of thirty years to life. In this instance, Bernier does even not qualify for this highest category of career offender, as his offenses carry a statutory maximum of twenty-five years or more rather than life. *See* note 2, *supra*. Nevertheless, because the Guidelines do not adequately take into account the enhancement provision built into

---

1. Section 4B1.4, the "Armed Career Criminal" category also applies to Bernier, and also results in an offense level of 34 and a criminal history of VI.

2. Section 4B1.1(B) covers a defendant whose statutory maximum sentence is twenty-five years or more, but less than life. It is arguable that, because § 924(e) specifies only a statutory minimum of fifteen years, Bernier could be sentenced to life on any one of the three § 922(g) violations, which would place him in

the § 4B1.1(A) category, with offense level 37 and criminal history category VI. However, particularly in light of the fact that use of a firearm in the commission of a bank robbery carries an absolute maximum of only forty-five years—twenty-five for bank robbery followed by twenty for a second violation of § 924(c)—it is more than likely that a life sentence for mere possession of a firearm would constitute cruel and *unusual punishment. Therefore, Bernier is* classed as a § 4B1.1(B) career offender.

§ 924(c), Bernier is subject to a minimum sentence more than twice as long as that provided by the Guidelines for a career criminal of his class.

Therefore this warrants a departure from the sentence specified by the Guidelines because it presents a situation "not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b). Although the Commission did consider the interplay between the Guidelines and the sequential sentence provisions of § 924(c), *see* § 2K2.4, comment. (n. 1), and there is evidence that it contemplated categorization as an "armed career criminal" in cases involving activity also punishable under § 924(c), *see* §§ 4B1.4(a), (b)(3)(A), and (c)(2), there is no indication that it contemplated the case in which an offender's sentence would be enhanced both by the career criminal provisions of the Guidelines and by the enhancement provision for a second violation of § 924(c). As the Federal Courts Study Committee has commented,

> [O]ur concern is that the recent mandatory minimums create penalties so distorted as to hamper federal criminal adjudication. They control judicial in a way that is far more rigid than—*indeed, inconsistent with*—the sentencing approach Congress adopted in the 1984 Sentencing Reform Act.

*Report of the Federal Courts Study Committee* 134 (1990).

The harsh mandatory minimums imposed under the Guidelines have already led to the resignation of the Honorable J. Lawrence Irving, who stated "I just can't, in good conscience, continue to do this." N.Y. Times, Sept. 30, 1990, § 1, Pt. 1, at 22, col. 1. Congress has also taken note of the possibility of conflict between mandatory minimum sentencing provisions and "the goal of eliminating unwarranted sentencing disparity." Crime Control Act of 1990, Pub.L. No. 101–647, § 1702, 104 Stat. 4789, 4845–46 (1990) (directing Sentencing Com-

mission to report on effects of mandatory minimums and to advise Congress of alternate methods to achieve sentencing consistency).

Here the operation of congressionally mandated minimum sentences more than doubles the appropriate Guideline sentence and consigns Bernier to a virtual life sentence. While the Guideline sentence itself exceeds what this court would have imposed, the mandatory minimums distort both the judgment of the court and the sentencing scheme devised by the Sentencing Commission. This distortion in addition produces an economic as well as personal consequence: the sentence will cost the taxpayers in the neighborhood of $680,000.[3]

Consequently, the court will depart from the Guidelines and reduce Bernier's sentence on the five counts I, III, IV, VI and VII to that which would have applied in the absence of the career criminal enhancement provisions of Ch. 4, Part B.

*Supervised Release and Fine*

██ The Guidelines also call for a term of supervised release of between two and three years. Ordinarily, the Guidelines would require imposition of a fine in an amount above $17,500. However, § 5E1.2(f) of the Guidelines provides for reduction of the fine here because the Presentence Report indicates that Bernier possesses minimal financial resources.

*Conclusion*

Bernier will be sentenced to mandatory minimum prison terms of fifteen years without possibility of parole on each of Counts III, VI and VII, and ten years on each of the two bank robbery counts, Counts I and IV, all of these terms to be served concurrently. On Count II, the sentence will be the mandatory term of five years without parole, consecutive to the preceding terms, and on Count V the mandatory term of twenty years without parole, consecutive as a matter of law to all of the other sentences. Therefore, Bernier's total prison sentence will be forty

---

**3.** Based on the most recent advisory from the Administrative Office of the U.S. Courts, which estimates that the monthly cost of imprison-

ment is $1,415.56, a forty-year prison term will cost $679,468.80.

years, as a result of congressional mandate. A term of three years supervised release will be imposed, and the mandatory special assessment of $350 shall be imposed.

This sentence is subject to further hearing on February 27, 1991.

It is so ordered.